# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4623 | **DATE** | SEPT. 21, 2000 |
| **CASE TITLE** | JERRY OGBORN v. UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 881, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for leave to file surreply [61-1] is granted. Plaintiff's motion to strike inadmissible evidence [44-1] is denied without prejudice. Defendants' motion for summary judgment [36-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's federal cause of action with prejudice and dismissing plaintiff's state law cause of action without prejudice for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 5 2000 date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | mo docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW courtroom deputy's initials | | ED-7 FILED FOR DOCKETING 00 SEP 22 PM 5: 14 Date/time received in central Clerk's Office | 9/21/2000 date mailed notice MQM mailing initials | Document Number 65 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JERRY OGBORN,                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )      No. 98 C 4623
                                       )
UNITED FOOD AND COMMERCIAL             )
WORKERS, LOCAL NO. 881,                )      **DOCKETED**
and STEVEN POWELL,                     )
                                       )      SEP 2 5 2000
                Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Ogborn was employed as a business representative for defendant United Food and Commercial Workers ("UFCW"), Local No. 881 (the "Local"). Also named as a defendant is Steven Powell. At the times relevant to the complaint, Steven Powell was the Local's Executive Vice President (hereinafter "Vice President Powell"). Plaintiff alleges that he suffered from clinical depression and that the Local improperly discharged him while he was on a medical leave of absence because of his depression. The Second Amended Complaint contains five counts. In Count I, it is claimed that the Local discharged plaintiff on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. In Count II, it is claimed that the Local violated the ADA by failing to accommodate plaintiff's disability by permitting him to continue



on a leave of absence instead of discharging him.  In Count III, it is claimed that the Local violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-17, by discharging plaintiff instead of permitting him the rights accorded under the FMLA.  Count IV is a supplemental state law claim against Vice President Powell in which it is claimed that Vice President Powell tortiously interfered with plaintiff's employment with the union by making false statements about plaintiff when the Local's Executive Board considered the appeal of plaintiff's discharge. Count V is a supplemental state law claim against both defendants that Vice President Powell defamed plaintiff when he made the false statements at the Executive Board meeting.  Presently pending is defendants' motion for summary judgment.[1]

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant.  Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999).  The burden of establishing a lack of any genuine issue of material fact rests on the movant. Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to

---

[1]Plaintiff's motion to file a surreply will be granted and the surreply has been considered in reaching today's ruling. As is discussed below, plaintiff's motion to strike is denied, but the contentions as to inadmissible evidence have been considered.

establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); id. at 325 ("the burden on the moving party may be discharged by 'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. Id. at 324.

> The non-moving party cannot rest on the pleadings
> alone, but must designate specific facts in
> affidavits, depositions, answers to
> interrogatories or admissions that establish that
> there is a genuine triable issue. _Id._ The
> non-moving party "must do more than simply show
> that there is some metaphysical doubt as to the
> material facts." _Matsushita Elec. Indus. Co. v._
> _Zenith Radio Corp._, 475 U.S. 574, 586 (1986).
> "The mere existence of a scintilla of evidence in
> support of the [non-moving party's] position will
> be insufficient; there must be evidence on which
> the jury could reasonably find for the
> [non-moving party]." _Anderson v. Liberty Lobby,_
> _Inc._, 477 U.S. 242, 252 (1986).

_Selan v. Kiley_, 969 F.2d 560, 564 (7th Cir. 1992).

Pursuant to Local Rule 56.1(a)(3), the party moving for summary judgment is required to provide a statement of material facts as to which the moving party contends there is no genuine issue. The statement is to be in the form of numbered paragraphs. The nonmovant is to reply to each paragraph, either admitting it is uncontested or stating the nonmovant's disagreement and specifically citing to supporting materials showing there is a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The nonmovant is also to provide a statement of additional facts, if any, that would defeat summary judgment, again in the form of numbered paragraphs with supporting citations. Loc. R. 56.1(b)(3)(B). The moving party may provide a paragraph by paragraph reply to any additional facts submitted by the nonmovant. Loc. R. 56.1(a) (last paragraph). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Loc. R. 56.1(b)(3)(B). Similarly, all material facts in the nonmovant's

Rule 56.1(b)(3)(B) statement "will be deemed admitted unless controverted by the [reply] statement of the moving party." Loc. R. 56.1(a) (last paragraph). Expressing disagreement with a fact contained in the statement of one's opponent without providing a citation to materials supporting that dispute is also a basis for deeming the factual assertions to be true. Garrison v. Burke, 165 F.3d 565, 567 (7th Cir. 1999); Valenti v. Qualex, Inc., 970 F.2d 363, 369 (7th Cir. 1992); Skagen v. Sears, Roebuck & Co., 910 F.2d 1498, 1500 (7th Cir. 1990). While the district court is permitted to require strict compliance with all the requirements of Local Rule 56.1, it is within the court's discretion as to how strictly to apply its own rules. Dade v. Sherwin-Williams Co., 128 F.3d 1135, 1140 (7th Cir. 1997); Weeks v. Samsung Heavy Industries Co., 126 F.3d 926, 938 n.5 (7th Cir. 1997); Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316-17 (7th Cir. 1995); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992); Havey v. Tenneco, Inc., 2000 WL 198445 *3-4 (N.D. Ill. Feb. 11, 2000); Gabriel v. City of Chicago, 9 F. Supp. 2d 974, 975 n.2 (N.D. Ill. 1998); United States v. 47 West 644 Route 38, Maple Park, Ill., 962 F. Supp. 1081, 1084 n.2 (N.D. Ill. 1997).

Here, plaintiff has moved to strike certain evidence that he contends is inadmissible on grounds of hearsay and foundation. These objections could have instead been incorporated into his Rule 56.1(b)(3)(A) statement. On the other hand, defendants complain that plaintiff has failed to comply with the requirements of Rule 56.1(b) because his responses are not always

concise, contain argument, and do not always contain citations.[2] Also, in his brief, plaintiff discusses facts and cites documents that are not raised in his Rule 56.1(b) statements. Defendants request that certain paragraphs of plaintiff's statement be stricken.[3] While neither party fully complied with the letter or spirit of Rule 56.1, their contentions generally can be followed.[4] It is unnecessary to strike any document or factual assertion. Instead, to the extent any factual assertion has been inadequately or improperly supported, such assertions will not be incorporated into the facts taken to be true for purposes of defendants' motion for summary judgment.

Resolving all genuine factual disputes in plaintiff's favor and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of summary judgment are as follows. Presently, plaintiff is approximately 49 years old. In 1980, plaintiff began working as a business agent for the Retail Clerks, Local 1460. In 1984, the Retail Clerks merged

---

[2]Plaintiff often objects that factual assertions in defendants' Rule 56.1(a)(3) statement are not supported by the evidence cited by defendants. In those instances, it is unnecessary for plaintiff to cite contrary evidence.

[3]Ironically, defendants also make many objections in their reply brief instead of incorporating the objections into their reply to plaintiff's Rule 56.1(b) statement.

[4]Still, the task is made more difficult by placing some contentions in briefs and not in the Rule 56.1 statements. Counsel for the parties are admonished to henceforth more fully comply with the strictures of this court's Local Rules. The rules are designed to make both the parties' and the court's tasks easier. Failure to fully comply with Rule 56.1 substantially defeats its purposes of clarity of presentation and ease of understanding and referencing.

with the UFCW and plaintiff continued in his position as a business agent with UFCW Local 1550. In 1989, Local 1550 merged into Local 881 and plaintiff continued to be employed as a business agent.[5] Plaintiff remained in this position until discharged on October 3, 1997.

At Local 881, a business representative's most important duty is representing employees on grievances.[6] Local 881 has established procedures for grievances that business representatives are expected to follow. Failure to follow these procedures could result in an unfair labor practices lawsuit against Local 881. No such lawsuit was ever filed concerning plaintiff's representation of a union member. During his approximately eight years with Local 881, plaintiff was suspended for one day in 1993, for three days in July 1996, and for three days in August 1997. He was also counseled for poor performance on a number of occasions and repeatedly warned that he would be terminated if his job performance did not improve. On the other hand, plaintiff received pay increases based on job performance

---

[5]Plaintiff's actual title at the Local was "business representative," but his duties did not change.

[6]Plaintiff objects to this characterization, which is supported by an affidavit and some testimony. Since plaintiff does not point to any contrary evidence that another duty is more important, there is no genuine factual dispute. See Pl. 56.1(b)(3)(A) ¶ 6. Plaintiff does present evidence that his duties also included picketing, training new employees, organizing, fundraising, public relations, political organizing, election-day duties, canvassing, and contract negotiations.

in November 1990, February 1991, November 1993, and January 1996[7]
and, despite repeated warnings, it was not until 1997, while on
medical leave, that he was terminated.

One of the Local's complaints about plaintiff's job
performance was his claimed failure to properly file and process
grievances. Plaintiff admitted that he did not file as many
grievances as other business representatives and that he was not
a "paper pusher." He explained that this was because he instead
spent more time at the stores and attempted to resolve grievances
informally before a written grievance needed to be filed. He
cannot deny, however, that an examination of numbers showed that
he filed less grievances than other business representatives and
that he was criticized by supervisors for failing to file more
grievances. Also, he had problems with timely preparing
grievances. In his 1994 year-end review,[8] plaintiff was

---

[7]Plaintiff does not point to any evidence as to how often
most business representatives received pay increases during that
time period.

[8]
Plaintiff objects to the use of documents from plaintiff's
personnel file. The affidavit of Ronald Powell, the Local's
President (hereinafter "President Powell"), authenticates the
documents as true and accurate copies of items from plaintiff's
personnel file. However, no affidavit is provided that
establishes the Local's regular practices regarding business
records. Therefore, on the present motion, the items from
plaintiff's personnel file are not admissible as business
records to show the truth of the matters contained therein. See
Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 444
(7th Cir. 1997). See also Jones v. Board of Trustees of
Community College District No. 508, 75 F. Supp. 2d 885, 888-89
(N.D. Ill. 1999). The documents are admissible to show that
criticisms of plaintiff were noted in his personnel file even if
not to show that the underlying conduct actually occurred.
Also, to the extent there is testimony that a decisionmaker

criticized, among other things, for: "Failure to write grievances as they were handled. One of the poorest records of the entire field staff." He was warned that continued poor performance could result in his termination and he received no wage increase at that time. A March 2, 1995 memorandum by plaintiff's immediate supervisor indicates that, with assistance, his grievance representation was improving. A July 26, 1995 memorandum in plaintiff's personnel file notes that two employees had complained that plaintiff failed to follow up on their grievances. On July 10, 1996, plaintiff was suspended three days for failing to properly handle a grievance.[9]

On August 20, 1997, Vice President Powell and Clint Brown (one of plaintiff's supervisors) met with him to discuss various job performance issues. Many of the performance problems discussed involved failure to properly file and process grievances. Plaintiff had not written any grievances during the period in question and was also criticized for the limited number he had written during the year-to-date. Following the meeting, plaintiff was suspended for three days and was told he should look for a new job because of his performance problems. He was told to provide Vice President Powell all his outstanding

---

relied on items in the personnel file, this evidence shows what was in the personnel file.

[9]Plaintiff points out that this suspension occurred six days after he first learned, on July 4, that his wife was having extramarital affairs, which soon led to their separation, divorce, and other personal problems. However, although the actual suspension was on July 10, it was based on substantial delays in processing the grievance that had already occurred before July 4.

grievances and that he would be terminated if there was one more incident. This was not the first time he had been threatened with termination. During the meeting, Vice President Powell also suggested that maybe plaintiff should seek medical attention.

On July 4, 1996, plaintiff learned his wife was having extramarital affairs. Later that month, she filed for divorce. In August 1996, plaintiff's wife received custody of their daughter. Plaintiff and his son moved in with plaintiff's parents. Plaintiff was having difficulty eating, sleeping, concentrating, thinking, and interacting with others. Plaintiff did not seek treatment until he met with Dr. Dan Clark on August 25, 1997. Dr. Clark diagnosed plaintiff as having clinical depression and prescribed medication for treatment, including Prozac and sleeping pills. Plaintiff admits that he does not know when his "clinical depression" began and that it cannot be determined with a reasonable degree of medical certainty when, prior to August 25, his depression may have begun. Plaintiff testified that, as of just prior to the August 25 diagnosis, he was able to perform his work duties and interact with others.

The three-day suspension was for August 21, 22, and 25, 1997. Plaintiff did not thereafter return to work. On August 25, he called in and said that he went to a doctor and had been "diagnosed" and therefore would be off. On August 26, plaintiff faxed the Local three pages of medical records indicating he was Dr. Clark's new patient and that he had been diagnosed on August 25 as having depression and would be "off

work until further notice."  Plaintiff was placed on paid medical leave until his October 3, 1997 discharge.

On August 27, and again on September 2 and 8, Vice President Powell requested that plaintiff provide additional medical documentation.  On August 28, plaintiff provided a form signed by Dr. Clark stated that plaintiff should be off until further notice and that the nature of his illness was depression. No details were provided.  Plaintiff saw Dr. Clark on September 8 and thereafter called the Local and informed them that his doctor had instructed him not to return to work and that his next appointment was September 22.  On September 17, Dr. Clark sent the Local a fax handwritten on his stationery which cryptically stated:

> Jerry Ogborn
> Dates of service  8/25/97
>                   9/8/97
> Being treated for anxiety/depression
> medications:  antidepressant (Prozac)
>   mood elevator (Elavil)
> To see patient every 2 wks to see progress.
> Back to work unknown at this time

On September 20, 1997, plaintiff was visiting with his ex-wife.  The ex-wife called the police to report that plaintiff was crazy and suicidal.  The police came and plaintiff was taken to a hospital for treatment.  Plaintiff testified at his deposition that he had not actually been suicidal.  He was released after a short time and required to have one follow up visit with a psychiatrist.

On September 22, plaintiff called the Local and stated he was seeing his doctor every two weeks and would be out for at

least two more weeks. No evidence is presented that, beyond early October 1997, plaintiff continued to be unable to work because of depression. Plaintiff's last session with Dr. Clark was May 7, 1998. Thereafter, pursuant to Dr. Clark's direction, plaintiff reduced his use of medication until he stopped altogether.

On August 28, 1997, Yolande Richards picked up at least one grievance file from plaintiff's home.[10] Lisa Cantanzaro, a supervisor of plaintiff, subsequently followed up on six grievances of union member Richard Ferrara which had not been completed by plaintiff. Cantanzaro was also informed by business representative Bill O'Keefe that numerous telephone calls had been received complaining about plaintiff.[11] Cantanzaro, Vice President Powell, Clint Brown, and Tom Padgett met to discuss plaintiff's job performance and possible termination. The information about the Ferrara grievances was new information not available when Vice President Powell had warned plaintiff on August 20. At the meeting Cantanzaro attended, Padgett stated he would recommend to President Powell that plaintiff be terminated.

---

[10]Plaintiff's notes (pl. Dep. Exh. 4) refer to Richards picking up a "file" and plaintiff's deposition testimony (at 84) refers to Richards coming to his house and a file for Roger Ferrara being requested. Lisa Cantanzaro's deposition testimony establishes that she followed up on six Ferrara grievances that plaintiff had not completed. There being no contrary testimony, the only reasonable inference is that Richards picked up a Ferrara grievance file on August 28.

[11]No evidence is presented to show that O'Keefe actually received the phone calls. The only nonhearsay evidence is that Cantanzaro was so informed.

Vice President Powell, Padgett, and Brown thereafter met with President Powell. President Powell agreed that plaintiff should be terminated. On October 3, 1997, President Powell and Padgett met with plaintiff and informed him he was being terminated. At the time, President Powell told plaintiff that, in addition to the items discussed with him in August, more instances of poor performance had been uncovered.[12]

Upon being discharged, plaintiff retained an attorney and appealed to the Local's Executive Board. Plaintiff's appeal was heard at an Executive Board meeting held on January 14, 1998. As with all such meetings, this meeting was tape recorded. Plaintiff's attorney was not permitted to represent plaintiff at the meeting, nor even assist plaintiff in making the presentation. In accordance with past practices, plaintiff was excluded from the meeting when Vice President Powell and President Powell responded to plaintiff's presentation.

During his presentation, Vice President Powell told the Executive Board that he had requested that plaintiff provide a "written narrative" of why he was going to be off work and that a written narrative was never received. After the presentation, one Board member stated that she did not have a problem with plaintiff's job performance, but was against granting the appeal because plaintiff had not provided a doctor's statement. Vice

---

[12]Plaintiff points to the fact that, at President Powell's deposition (which occurred a year or more after the October 1997 meeting), President Powell could not recite specific examples of plaintiff's additional poor performance. President Powell explained that he had not reviewed plaintiff's personnel file in preparation for the deposition.

President Powell did not take the opportunity to clarify that, although no "narrative" had been received, some medical documentation had been provided.

Vice President Powell also told the Executive Board that plaintiff had told the Local that a store at which the Union represented employees had been closed even though it had not. He further told the Board that the store had to be reopened in the Local's records so that a business representative would again visit the store after a nine-month absence. These representations were completely untrue and Vice President Powell knew they were untrue.[13] It is undisputed that plaintiff never told anyone the store was closed and the store was regularly visited by business representatives during the pertinent nine-month period.

Following the presentations, the Executive Board voted 29 to 4 to uphold plaintiff's dismissal.

Plaintiff also contends that the tape recording of the Executive Board meeting is not fully accurate. Plaintiff submits a report of his forensic expert in an attempt to show that the purportedly original tapes provided in discovery were not originals and that the tapes provided had missing segments. Assuming there are missing portions, plaintiff does not provide testimony from any of the participants as to what may have been

---

[13]A store being closed would have resulted in various procedures that would have come to the Local's attention. Vice President Powell knew or should have known that this statement was untrue. On summary judgment, it must be assumed he had actual knowledge of the statements' falsity.

omitted. Defendants object that the expert's report cannot be considered because it is hearsay. Although expert reports are often provided in response to summary judgment as evidence of what an expert's testimony would be at trial, when the opposing party objects, the proponent must provide testimony or an affidavit of the expert, or at least an affidavit confirming that the expert's testimony would be consistent with the opinions expressed in the report. See Wittmer v. Peters, 87 F.3d 916, 917 (7th Cir. 1996), cert. denied, 519 U.S. 1111 (1997); Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989); Ecolab, Inc. v. Amerikem Laboratories, Inc., 98 F. Supp. 2d 569, 573 (D.N.J. 2000); Rainforest Café, Inc. v. Amazon, Inc., 86 F. Supp. 2d 886, 904 (D. Minn. 1999); Luque v. Hercules, Inc., 12 F. Supp. 2d 1351, 1358 (S.D. Ga. 1997); Sofford v. Schindler Elevator Corp., 954 F. Supp. 1459, 1462-63 (D. Colo. 1997); Hayne v. Rutgers, The State University, 1989 WL 106031 *12 (D.N.J. Aug. 10, 1989). Here, plaintiff objected that the expert's report, by itself, was hearsay and plaintiff was permitted to file his surreply in which he responded to that objection. Because plaintiff did not respond by providing deposition testimony, an affidavit, a sworn statement, or a declaration (see 28 U.S.C. § 1746) of the expert, the expert's report has not been considered and the implication of any possible inaccuracies in the tapes has not been considered.

The ADA claims will be considered first. To qualify for protection under the ADA, a person must be "a qualified individual with a disability." 42 U.S.C. § 12112(a); Moore v.

J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000);
Nowak v. St. Rita High School, 142 F.3d 999, 1002 (7th Cir.
1998). The burden is on plaintiff to show that he is a qualified
individual with a disability. Cleveland v. Policy Management
Systems Corp., 526 U.S. 795, 805-06 (1999); Moore, 221 F.3d at
950; Nowak, 142 F.3d at 1002. A qualified individual with a
disability is defined as "an individual with a disability who,
with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds or desires." 42 U.S.C. § 12111(8); Nowak, 142
F.3d at 1002. The ADA defines a "disability" as including "a
physical or mental impairment that substantially limits one or
more of the major life activities of such individual." 42 U.S.C.
§ 12102(2)(A); 29 C.F.R. §§ 1630.2(g)-(k); Gorbitz v. Corvilla,
Inc., 196 F.3d 879, 882 (7th Cir. 1999). A "disability" is also
defined as "being regarded as having such an impairment." 42
U.S.C. § 12102(2)(C); 29 C.F.R. § 1630.2(l); Sutton v. United
Airlines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 2149-50 (1999);
Wright v. Illinois Department of Corrections, 204 F.3d 727,
730-31 (7th Cir. 2000).

There is no dispute that plaintiff had a mental
impairment, that is his depression. Defendants, however, contend
that it does not qualify as an actual disability under
§ 12102(2)(A) because it did not substantially limit a major life
activity. Plaintiff contends it substantially limited his
ability to work. As to work, the "term substantially limits
means significantly restricted in the ability to perform either a

class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).  Factors to consider in determining whether there is a substantial limitation include:  "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  Id. § 1630.2(j)(2).[14]

        The burden is on plaintiff to show that he had a disability.  At most, plaintiff has shown that his depression was severe enough to preclude work for two months or less, from August 25 until sometime in October.  There is no evidence that any permanent or long term impact remains from the severe period of his depression.  Nor is there any evidence that, during his worst period, there was an expectation (even if wrong) that the depression and its disabling effects would be lengthy in duration.  An impairment of this sort for this short in duration does not constitute a substantial limit on a major life activity. See Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); Sommers v. Household International, Inc., 1999 WL 1285858 *6-7 (N.D. Ill.

---

        [14]The regulations also set forth additional factors that may be considered when the activity being limited is work.  See 29 C.F.R. § 1630.2(j)(ii).

Dec. 30, 1999); Cutler v. Jewel Food Stores, Inc., 1998 WL 895453
*5 (N.D. Ill. Dec. 14, 1998); Erjavac v. Holy Family Health Plus,
13 F. Supp. 2d 737, 749 (N.D. Ill. 1998); Brown v. Northern Trust
Bank, 1997 WL 543098 *4-5 (N.D. Ill. Sept. 2, 1997); Mescall v.
Marra, 49 F. Supp. 2d 365, 373 (S.D.N.Y. 1999); 29 C.F.R. App. §
1630.2(j).

Alternatively, plaintiff contends that, under 42 U.S.C.
§ 12102(2)(C), he was disabled because the Local regarded him as
having a substantially limiting impairment.  In order to satisfy
this definition of disability, plaintiff must show that the Local
had misconceptions about his actual disability, either that it
believed he had a substantially limiting impairment that he did
not actually have or that it believed the depression that he had
was more limiting than it actually was.  See Sutton, 119 S. Ct.
at 2150; 29 C.F.R. § 1630.2(l).  The former is not at issue in
this case; there is no contention that the Local believed
plaintiff had some other type of impairment.  As to the latter,
the specific showing that plaintiff must make is that the Local
believed the disabling degree of depression would last for longer
than a temporary period.

The Local contends that the "regarded as" claim is waived
because plaintiff did not exhaust this claim before the EEOC nor
include it in the original or amended complaints that he has
filed.  However, plaintiff has always alleged that he had a
disability and, under the statute, disability is defined as
including being regarded as having a disability.  Even if
plaintiff's EEOC charge should be read as alleging an actual

- 18 -

disability as defined by § 12102(2)(A), plaintiff may raise claims in court that are reasonably related to and grow out of the claims contained in the EEOC charge. McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 481 (7th Cir. 1996); Cheek v. Western & Southern Life Insurance Co., 31 F.3d 497, 500 (7th Cir. 1994). This would include bringing a § 12102(2)(C) claim based on the same conduct underlying a § 12102(2)(A) claim and implicating the same individuals. Morris v. Dempsey Ing, Inc., 1999 WL 1045032 *2-3 (N.D. Ill. Nov. 12, 1999); Baker v. Chicago Park District, 1999 WL 519064 *5 (N.D. Ill. July 15, 1999); Pellack v. Thorek Hospital & Medical Center, 9 F. Supp. 2d 984, 989 (N.D. Ill. 1998). Plaintiff has not waived his § 12102(2)(C) claim.

Although not waived, plaintiff's § 12102(2)(C) claim fails because he has not shown that the Local regarded him as having depression that was any more severe than what he actually had. Plaintiff points to the evidence that, during the August 20, 1997 meeting, Vice President Powell suggested that perhaps plaintiff should see a doctor. That, however, does not show that Powell believed plaintiff had a permanent and severe case of depression or some other illness. Moreover, the information that plaintiff thereafter provided to the Local was that he would be at the doctor every two weeks and that, after each appointment, he would report whether he could return to work. This is not indicative of a long-term illness or disability and there is no evidence that anyone at the Local

understood it as such. Plaintiff has failed to show that the
Local regarded him as having anything more severe than the
short-term depression that he actually had. Since, as discussed
above, the actual depression does not qualify as a disability, it
cannot be found that plaintiff was regarded as having a
disability. Cf. Brown, 1997 WL 543098 at *6.

Because plaintiff has not satisfied his burden of showing
that he had a disability as that term is defined by the ADA, his
ADA claims must fail. Counts I and II will be dismissed with
prejudice.

The next claim to consider is the FMLA claim. Again, the
Local contends this claim is waived for failure to exhaust
administrative remedies. In his Second Amended Complaint,
plaintiff alleges that he was discharged while still on sick
leave. He contends that this discharge was in violation of his
federally protected rights and caused him mental anguish, pain,
and suffering in addition to an economic loss. In response to
summary judgment, plaintiff states that his claim is that he was
denied the entire 12 weeks of leave that the FMLA requires an
employer to provide, see 29 U.S.C. § 2612(a), and that he was
also denied the FMLA right to return to his former position or an
alternative position, see id. § 2614(a). Plaintiff expressly
states that he is not claiming that his discharge was in
retaliation for having taken leave protected by the FMLA. The
Local argues that, before the EEOC, plaintiff presented a
retaliation claim, but not the claim he now asserts. The Local
contends the present claim should be dismissed for failure to

exhaust administrative remedies. However, the FMLA does not itself[15] require exhaustion of any administrative remedies, let alone exhaustion before the EEOC.[16] See 29 U.S.C. § 2617; 29 C.F.R. § 825.400; Shannon v. City of Philadelphia, 1999 WL 126097 *4 (E.D. Pa. March 5, 1999); Krohn v. Forsting, 11 F. Supp. 2d 1082, 1085 (E.D. Mo. 1998); Danfelt v. Board of County Commissioners of Washington County, 998 F. Supp. 606, 609 (D. Md. 1998); Spurlock v. NYNEX, 949 F. Supp. 1022, 1030 (W.D.N.Y. 1996). Plaintiff adequately alleges his FMLA claim in his complaint and the claim is not subject to dismissal for failure to exhaust any administrative remedies.

The Seventh Circuit has identified two categories of FMLA claims. See Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016-17 (7th Cir. 2000); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1997). The first category is a claim that the employee has been denied one of the substantive rights

---

[15]A person's employment could be governed by another law or a contract provision that otherwise requires exhaustion of an administrative remedy. See, e.g., Ladd v. Second National Bank of Warren, 941 F. Supp. 87, 90-91 (N.D. Ohio 1996) (former employee of bank that had been placed in receivership was required to exhaust her administrative remedies under the Financial Institutions Reform, Recovery and Enforcement Act before bringing FMLA claim in court); Krohn, 11 F. Supp. 2d at 1085-86 (considering whether city employee had to first exhaust remedies that existed under the city's charter). There is no contention that any such provision applies to plaintiff.

[16]An employee may file an FMLA complaint with the Secretary of Labor, but is not required to do so. See 29 U.S.C. § 2617(b); 29 C.F.R. § 825.400. If the Secretary of Labor files an action seeking damages or payments for the employee, the employee is preempted from filing his or her own action. See 29 U.S.C. § 2617(a)(4). There is no contention that the Secretary has brought any such action.

contained in sections 2612 to 2615 of the FMLA, e.g., the right
to 12 weeks of medical leave.  The burden is on the employee to
prove that he or she is entitled to the statutory right and did
not receive it.  Generally, the employer's intent in denying the
right is immaterial.  The second category of FMLA claim is one
based on discrimination or retaliation for exercising rights
under the FMLA.  Such claims are generally analyzed under the
same burden-shifting standards generally employed for Title VII
and other discrimination statutes.

Still, the FMLA does not accord an employee any right,
benefit, or position of employment greater than he or she would
have been entitled to have regardless of taking any medical
leave.  Rice, 209 F.3d at 1017.  More specifically, the FMLA does
not prohibit an employer from terminating an employee, including
one on FMLA leave, on any ground other than in retaliation for or
because of exercising rights under the FMLA.  See Kariotis v.
Navistar International Transportation Corp., 131 F.3d 672, 680-81
(7th Cir. 1997); Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1157
(7th Cir. 1997); Hale v. Mann, 219 F.3d 61, 68, 70 (2d Cir.
2000); O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349,
1354 (11th Cir. 2000); Serio v. Jojo's Bakery Restaurant, 102
F. Supp. 2d 1044, 1052 (S.D. Ind. 2000); Routes v. Henderson, 58
F. Supp. 2d 959, 995-96 (S.D. Ind. 1999); Hubbard v. Blue Cross
Blue Shield Association, 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998);
29 U.S.C. § 2614(a)(3)(B); 29 U.S.C. § 825.216.  Thus, an
employee who would have been discharged on grounds other than for
taking leave (or exercising some other FMLA right) can still be

discharged even while on leave and need not be returned to his or her prior position (or an equivalent). In such situations, an employee claiming denial of the substantive right to 12 weeks leave and/or the substantive right to return to work has the burden of persuasion in showing that he or she would not have been discharged absent taking the FMLA leave. Rice, 209 F.3d at 1019. The employer need only meet the burden of production of asserting an alternative reason for the discharge. Id.

Here, the Local takes the position that plaintiff would have been discharged regardless of his taking leave because of his deficient job performance regarding processing grievances. Accepting plaintiff's express concession regarding the FMLA claim (see Pl. Amended Answer Br. at 12) that he is not claiming retaliation for having taken FMLA leave, plaintiff's FMLA claim could be treated as being subject to dismissal for failure to prove that he would not have been discharged absent taking leave. However, as regards the Count I ADA claim, plaintiff argues that the evidence shows that his alleged failure to adequately process grievances was not the actual reason for his discharge. This argument will be considered in determining whether plaintiff has satisfied his burden of showing that a genuine factual dispute exists regarding whether he would not have been discharged (and thus not denied his FMLA rights to 12 weeks leave and a return to his position) had he not taken leave.

The Local has proffered a legitimate, nondiscriminatory reason for plaintiff's discharge. The question is whether, on

the evidence before the court, a genuine factual dispute exists
as to whether this was the actual reason for plaintiff's
discharge or instead a pretext.  To show that an employer's
stated ground for an adverse employment action is pretextual, a
plaintiff generally must present either direct evidence that an
illegitimate ground was a motivating factor in the employer's
decision or present a material factual dispute as to the
sincerity of the proffered reason.  See Collier v. Budd Co.,
66 F.3d 886, 892 (7th Cir. 1995) (quoting Colosi v. Electri-Flex
Co., 965 F.2d 500, 502 (7th Cir. 1992)).  As to the latter, it
must be shown (a) that the proffered reason had no basis in fact,
(b) that the proffered reason did not actually motivate the
decision, or (c) that the reason was an insufficient reason to
motivate the adverse action.  O'Connor v. DePaul University,
123 F.3d 665, 670 (7th Cir. 1997); McClendon v. Indiana Sugars,
Inc., 108 F.3d 789, 798 (7th Cir. 1997); Collier, 66 F.3d at 892
(quoting Cliff v. Board of School Commissioners of City of
Indianapolis, Ind., 42 F.3d 403, 412 (7th Cir. 1994)).

Plaintiff does not have direct evidence that his taking
of leave motivated his discharge.  Therefore, he instead must
show that a genuine factual dispute exists as to the sincerity of
the stated ground for his discharge.  No genuine factual dispute
exists that plaintiff's processing of grievances was deficient
and that processing of grievances was his most important job
duty.  Therefore, his deficient performance certainly was a

sufficient basis for discharging him.  Also, the undisputed
evidence shows that, subsequent to the August 20 meeting,
additional evidence of failure to prosecute grievances was
discovered following grievance documents being retrieved from
plaintiff's home.  The only evidence that plaintiff can point to
as raising a question about the sincerity of the Local's stated
grounds is the fact that, before the Executive Board, Vice
President Powell embellished the grounds for plaintiff's
discharge by adding an additional ground for plaintiff's
discharge (the purported store closing) that had no factual
basis.[17]  There is no evidence, however, that this false
information was provided to President Powell at the time he
decided to discharge plaintiff nor is there any indication or
contention that this information was determinative in the
Executive Board's decision to uphold plaintiff's discharge.  On
the evidence before the court, no reasonable trier of fact could
find that the stated ground for plaintiff's discharge (poor
processing of grievances) was not the actual reason and instead
plaintiff was discharged because he requested leave.  The Local
is entitled to summary judgment on the FMLA claim.

---

[17]Plaintiff also complains about the statements regarding
the failure to provide a "medical narrative."  It was true,
however, that no narrative was provided and that the medical
documentation actually provided was minimal.  At most, it was
minimally misleading for Vice President Powell to specifically
state that plaintiff did provide the minimal documentation
actually provided.

Because plaintiff's federal claims are all being dismissed, plaintiff's supplemental state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED that plaintiff's motion for leave to file surreply [61-1] is granted.  Plaintiff's motion to strike inadmissible evidence [44-1] is denied without prejudice. Defendants' motion for summary judgment [36-1] is granted.  The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's federal cause of action with prejudice and dismissing plaintiff's state law cause of action without prejudice for lack of subject matter jurisdiction.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:  SEPTEMBER 21, 2000