# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William T. Hart | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4623 | **DATE** | 4/30/2003 |
| **CASE TITLE** | Jerry Ogborn vs. Local 881 United Food  Workers | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Report and Recommendation submitted to Judge Hart. It is hereby recommended that Defendant Local 881 United Food & Commercial Workers' Petition for Rule to Show Cause that Plaintiff be held in contempt of court [#100] be **granted**. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **3** | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 01 2003 | |
| | Notified counsel by telephone. | | date docketed | 106 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 4/30/2003 | |
| FT/*secy* | courtroom deputy's initials | | date mailed notice  FT/ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JERRY OGBORN,               )
                            )
     Plaintiff,          )
                            )
        v.              )     Case No. 98 C 4623
                            )
LOCAL 881 UNITED FOOD &    )
COMMERCIAL WORKERS, and    )     Magistrate Judge
STEVEN POWELL,          )     Arlander Keys
                            )
     Defendants.        )
                            )

**DOCKETED**

MAY 0 1 2003

TO:  THE HONORABLE WILLIAM T. HART
      UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

This matter was referred to the Court on Local 881 United Food & Commercial Workers' ("Local 881") Petition for Rule to Show Cause (the "Petition"), requesting that Plaintiff Jerry Ogborn be held in contempt of court. For the reasons set forth below, this Court recommends that Local 881's Petition be granted and that Mr. Ogborn be held in civil contempt of court.

### FACTS

### I. Procedural History

On September 21, 2000, the district court granted Local 881's motion for summary judgment in an employment discrimination case filed by Mr. Ogborn against Local 881. *See Ogborn v. United Food & Commerc. Workers, Local No. 881,* 98 C 4623, 2000 WL 1409855 (N.D. Ill. Sep. 25, 2000). Subsequently, Local 881 submitted its bill of costs to the district court. *See Ogborn v.*



*United Food & Commerc. Workers, Local No. 881,* 98 C 4623, 2000 WL 1810059 (N.D. Ill. Dec. 7, 2000). Mr. Ogborn objected to the bill of costs on the ground that it was untimely. *Id.* at *1. However, the district court found that Local 881's bill of costs was timely, and awarded it $4,371.01 in costs. *Id.* at *2.

Mr. Ogborn moved for reconsideration, a stay of execution of the judgment for costs, and modification of the amount of costs. On January 17, 2001, the district court denied his motions for reconsideration and stay of execution, but vacated the December 7, 2000 order and entered an amended judgment in favor of Local 881 and against Mr. Ogborn in the amount of $3,965.46. *Ogborn v. United Food & Commerc. Workers, Local No. 881,* No. 98 C 4623, Minute Order (N.D. Ill. Jan. 17, 2001).

Mr. Ogborn appealed the January 17, 2001 order to the United States Court of Appeals for the Seventh Circuit. On September 27, 2002, the Seventh Circuit upheld the Court's award of costs against Mr. Ogborn in the sum of $3,965.46. *Ogborn v. United Food & Commerc. Workers, Local No. 881,* 305 F.3d 763, 770 (7th Cir. 2002) (*"Ogborn II"*). On October 25, 2002, the Seventh Circuit denied Mr. Ogborn's petition for rehearing. Further, on November 4, 2002, the Seventh Circuit awarded an additional $256.20 in appellate costs to Local 881, bringing the total amount of costs that Mr. Ogborn owes to Local 881 to $4,221.66.

## II. Local 881's Petition

On October 29, 2002, subsequent to the Seven Circuit's decision in *Ogborn II*, Local 881 sent a letter to Mr. Ogborn's counsel, demanding payment of Local 881's costs. (Def. Mot. Rule to Show Cause, Ex. A.)[1] However, neither Mr. Ogborn nor his counsel responded to this letter. Local 881 sent a second letter to Mr. Ogborn on November 18, 2002, demanding payment of the judgment (*id.* at Ex. B), but Mr. Ogborn and his counsel ignored this letter as well.

Local 881 then filed this Petition, asking that Mr. Ogborn be held in contempt of court for failing to comply with Local 881's repeated requests for costs.[2] On January 31, 2003, this Court directed Mr. Ogborn to respond to the Petition by February 21, and scheduled a hearing for February 28. *Ogborn v. United Food & Commerc. Workers, Local No. 881*, 98 C 4623, Minute Order (N.D. Ill. Jan. 31, 2003). As of the date of this Report and Recommendation, Mr. Ogborn has not filed a response to Local 881's Petition.

---

[1] The Court notes that the December 7, 2000 order awarding Local 881 $4,371.01 has been vacated. Therefore, the correct amount of costs due Local 881 is $4,221.66, which is the amount awarded by the district court on January 17, 2001, plus the additional $256.20 in appellate costs awarded by the Seventh Circuit.

[2] Local 881's motion for rule to show cause was referred to this Court on January 24, 2003.

## III.  Hearing on Local 881's Petition

Counsel for both parties appeared before the Court on February 28, 2003.  Local 881 was represented by Jonathan D. Karmel, and Mr. Ogborn was represented by Lawrence V. Jackowiak. (Hr'g at 1.)  Inexplicably, Mr. Ogborn did not appear at the hearing.

Mr. Karmel stated that he had sent two letters to Mr. Jackowiak, requesting payment of the judgment.  (Hr'g at 3.) However, neither Local 881 nor its counsel had received any response from Mr. Ogborn or Mr. Jackowiak regarding payment of the judgment.  (*Id.*)

In response, Mr. Jackowiak disputed Local 881's claim and asserted that he had "multiple conversations with the attorney [Mindy Kallus] who ha[d] been handing the case."  (*Id.* at 7.) Mr. Jackowiak testified that he had informed Ms. Kallus that Mr. Ogborn did not have the resources to pay the judgment.  (*Id.* at 6.)  According to Mr. Jackowiak, Mr. Ogborn is in his mid-fifties, earns $8.00 per hour, and has neither the money nor other assets to pay the judgment.  (*Id.* at 4.)

Local 881 disputes Mr. Ogborn's poverty argument, pointing out that Mr. Ogborn is employed and has failed to submit any affidavits or other evidence establishing his alleged poverty. (*Id.* at 9.)  Local 881 also argues that Mr. Ogborn appears to

4

have sufficient resources, because he has been able to fund a defamation lawsuit now pending in state court against Local 881. (*Id.*) Mr. Karmel pointed out that Mr. Ogborn had noticed up several depositions, and continues to incur other costs in the state court, in contradiction of his claim that he does not have sufficient funds. (*Id.*)

Mr. Jackowiak explained that he is representing Mr. Ogborn in the state court matter on a contingency basis, and that Mr. Ogborn "hasn't spent a penny pursuing the case in state court." (*Id.* at 12.) Mr. Jackowiak stated that, although the costs of litigation technically are his client's responsibility, Mr. Ogborn has not paid him any retainer. (*Id.* at 13.) In addition, Mr. Jackowiak, frankly and surprisingly, informed the Court that Mr. Ogborn has chosen, "through the advice of counsel," to pursue his case in state court instead of paying the judgment to Local 881. (*Id.* at 11.)

Finally, Mr. Jackowiak contends that civil contempt is not a proper way to enforce a judgment. (*Id.*) Instead, he argued that Local 881 must take certain steps, including the filing of a citation to discover assets, which Local 881 has not yet taken. (*Id.* at 13.)

## DISCUSSION

A court's civil contempt power rests in its inherent authority to enforce compliance with court orders and to ensure that judicial proceedings are conducted in an orderly manner. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). The nature of contempt may be civil, criminal, or both. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). In order to make out a prima facie case of civil contempt against a party, the movant must establish the existence of a valid court order, and that the party has knowledge of the order and failed to comply with the order. *See Hicks v. Feiock,* 485 U.S. 624, 628 (1988). Thus, a court may impose civil sanctions to compel or coerce obedience to a court order, or to compensate the parties for losses resulting from the contemnor's non-compliance with a court order. *United Mine Workers,* 330 U.S. at 303-04.

*South Suburban Housing Ctr. v. Berry,* 186 F.3d 851 (7th Cir. 1999), is illustrative of the trial court using its contempt power to coerce compliance with its orders. In *South Suburban, a* housing organization filed a lawsuit against a real estate agent for racial steering. *Id.* at 852. Pursuant to a settlement consent decree entered by the trial court, the agent had to document her contacts with prospective home buyers, pay the

6

housing organization monetary damages for five years, submit her

financial statements and tax returns, and deliver an accounting

of her earnings to the housing organization on a quarterly basis.

*South Suburban, Id.* at 852-53.  A few months later, the agent

submitted only partial tax returns and ignored the orders' other

provisions.  *Id.*  The trial court held the agent in civil

contempt, finding that none of the three elements for contempt

were in dispute.  *Id.* at 853.

Similar to *South Suburban*, the existence of an enforceable

order is not in dispute in this case.  On January 17, 2001, the

district court ordered Mr. Ogborn to pay a judgment of $3,965.46

to Local 881.  Over a year later, the Seventh Circuit upheld the

district court's award of costs, and also ordered Mr. Ogborn to

pay the judgment to Local 881.  On October 25, 2002, the Seventh

Circuit denied Mr. Ogborn's petition for rehearing and entered

yet another order directing Mr. Ogborn to pay the judgment.

Thereafter, Local 881 sent two letters to Mr. Ogborn's counsel,

demanding payment of Local 881's costs.

However, Mr. Ogborn ignored the district court's January 17,

2001 order, both Seventh Circuit orders, and both letters from

Local 881 demanding payment.  Mr. Ogborn has neither paid any

portion of the amount he owes, nor has he responded in a

meaningful way to Local 881's demand.  Moreover, Mr. Ogborn

ignored this Court's order directing him to file a timely response to Local 881's Petition, and failed to appear for the in-court hearing on the matter.

Mr. Jackowiak does not dispute Mr. Ogborn's noncompliance with the district court's, this Court's and the Seventh Circuit's respective orders. Instead, Mr. Jackowiak explains that he has advised Local 881's counsel that Mr. Ogborn is destitute and is unable to pay the judgment.

The Court acknowledges that a party's inability to comply with a court order, due to the party's poverty, is a defense to a charge of civil contempt. *Hicks,* 485 U.S. at 638, n.9. The United States Supreme Court has stated that "[o]ur precedents are clear . . . punishment may not be imposed in a civil contempt proceeding when it is *clearly established* that the alleged contemnor is unable to comply with the terms of the order." *Id.* However, Mr. Jackowiak's alleged conversations with Ms. Kallus falls woefully short of establishing Mr. Ogborn's complete inability to comply with the court orders.

A party must present evidence of his inability to comply with a court order. *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir. 1995). The burden rests with Mr. Ogborn to "clearly, plainly, and unmistakably" establish his inability to pay. *Id.* Mere "[c]onclusory statements are inadequate to carry this

8

burden." *Id.* Obviously, a party who offers no evidence but merely "stands mute" has not satisfied his burden. *Maggio v. Zeitz,* 333 U.S. 56, 75 (1948).

In this case, Mr. Ogborn squandered several opportunities to present the Court with evidence of his poverty. He failed to submit a brief and/or affidavit in response to Local 881's Petition, and neglected to attend his own Rule to Show Cause hearing. At the hearing, his counsel argued that Mr. Ogborn lacked the resources to pay the judgment, but did not bother to submit a pleading, affidavit, or other evidence attesting to Mr. Ogborn's poverty.

In addition, Mr. Jackowiak's claims of Mr. Ogborn's poverty are suspect. Despite the fact that Mr. Ogborn allegedly earns only $8.00 an hour, he has been able to prosecute his state court case against Local 881. Lawsuits — and the appeal that Mr. Ogborn filed — cost money, and belie Mr. Jackowiak's representation of Mr. Ogborn's financial situation.[3]

The Court also disagrees with Mr. Jackowiak's claim that contempt of court is not a proper way to enforce a judgment. The

---

[3] Although Mr. Jackowiak testified that Mr. Ogborn is not currently paying him, and that Mr. Jackowiak is advancing all fees, Mr. Jackowiak has failed to present to the Court any attorney-client agreement showing that the costs advanced by Mr. Jackowiak will be extinguished if Mr. Ogborn does not recover any damages from the state litigation.

procedures to enforce a money judgment in a civil case is governed by Rule 69(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2007.

Rule 69(a) provides that enforcement "shall be by writ of execution, unless the court directs otherwise." FED. R. CIV. P. 69(a) (2001). Further, enforcement "shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." *Id.*

Pursuant to § 2007, a judgment debtor "shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State where imprisonment for debt has been abolished." 28 U.S.C. § 2007 (2002). The Illinois Constitution has abolished imprisonment for debt "unless [the debtor] refuses to deliver up his estate for the benefit of his creditors as provided by law or unless there is a strong presumption of fraud." ILL. CONST. art. I, § 14.

Mr. Ogborn should be required to pay for his lackadaisical attitude toward Local 881's request for satisfaction of the judgment and the authority of the courts, or face stiffer sanctions. Local 881's repeated attempts to resolve this matter, short of judicial intervention, were largely ignored by Mr.

Ogborn. This Court would have been receptive to considering evidence of Mr. Ogborn's poverty - in the form of affidavits, tax returns, financial records, etc. - had Mr. Ogborn made the minimal effort required to produce them. Most troubling is the Court's perception that Mr. Ogborn's decision to ignore the judgment may have been guided by the advice of his counsel, who, apparently, explained to Mr. Ogborn that his alleged meager resources were better spent on the state court action. The Court recommends that Mr. Ogborn be found in civil contempt of court for failing to comply with various courts' orders entered against him.

Having found that Mr. Ogborn is in contempt of the district court's January 17, 2001 order and the Seventh Circuit's September 27, and October 25, 2002 orders, the Court considers the appropriate sanction against Mr. Ogborn. Civil contempt proceedings may be classified either as coercive or remedial. *Jones*, 188 F.3d at 738. Sanctions for civil contempt are designed either to coerce the contemnor to comply with an express court directive or to compensate the complainant for losses as a result of contumacy. *Id.* Coercive sanctions seek to induce future behavior by attempting to coerce a noncompliant party to comply with an express court order. *Id.* By contrast, remedial sanctions "are backward looking and seek to compensate an

aggrieved party for losses sustained as a result of the contemnor's disobedience." *Id.*

Thus, this Court recommends that an appropriate sanction against Mr. Ogborn would be to require him to pay a daily fine for every day that he continues to violate the provisions of the district court's Order. The Court further recommends that Local 881's Petition for Order to Show Cause be granted and that Mr. Ogborn be held in civil contempt of court.

April 30, 2003                                    RESPECTFULLY SUBMITTED:

ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable William T. Hart. *See* FED. R. CIV. P. 72(b); 28 U.S.C. §636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).